## JENNINGS *a.* JENNINGS.

*New York Superior Court; Special Term, June,* 1855.

### BOND OF GUARDIAN AD LITEM.—PRACTICE IN PARTITION.

Where a guardian ad litem, appointed in a partition suit, omitted to file a bond, as required by the Revised Statutes, at the time of his appointment; but after judgment and sale an order was made, giving him leave to file a bond *nunc pro tunc,* which was done :—*Held,* that the order and consequent filing were of no effect.

The bond required by the Revised Statutes to be given by a guardian ad litem must be executed by the guardian himself. A bond by sureties on his behalf, in which he does not join, is not a compliance with the statute.

The provision of the Revised Statutes, requiring the filing of a bond by a guardian

ad litem of infant defendants in a partition suit, affects the substance and subject matter of the action, rather than its form, within the meaning of § 448 of the Code. The filing of such bond, in actions commenced under the Code, is necessary to render the acts of the guardian binding upon the infants.

The proper practice, in partition suits commenced under the Code, reviewed.

Motion to compel a purchaser, on a sale in partition, to complete his purchase.

This was an action commenced under the Code, in February, 1853, for the partition of the lands late of one Jennings, among his heirs at law. Judgment of partition was rendered, and a sale was made, at which one J. G. Flammer became the purchaser.

Flammer subsequently refused to complete his purchase, upon the following grounds.

1. That his bid at the sale was made by the map of the property furnished at the sale, and put up on the property by the plaintiff; on which map the property was described as being "fifty feet nine inches on Sixth Avenue and eighty feet on Sixth-street, or Waverly Place"—whereas in fact it was only forty-five feet three inches on the former street, and seventy-nine feet six inches on the latter. This deficiency in the extent of the land, the purchaser alleged to be of upwards of $1600 in value.

2. That no judgment in the suit had been entered, nor any judgment roll made up.

3. That the proceedings in the partition suit were irregular and void, as against several infant defendants, for the reason that no bond was filed by their guardians ad litem ; and consequently no valid title could be given, as against them.

The latter was the objection principally relied on.

*T. H. Rodman,* for the plaintiff.—We contend that no bond was necessary, because the proceedings in partition suits, like those in all other actions commenced since July 1, 1848, are governed by the Code, and the Code does not require a bond by a guardian ad litem. Section 8 of the Code applies to all actions. The jurisdiction of this court in actions of partition depends on sections 33 and 125 of the Code. (*See* §§ 308, 309). Section 471 is not inconsistent with

this view, for " whenever, in consequence of the proceedings thereby excepted from the operation of the Code, a civil action is brought, such action shall be conducted in conformity to the Code. And section 448 only applies the provisions of the Revised Statutes relating to the partition of lands, to actions " brought under the Code so far as the same can be applied to the substance and subject matter of the action, without regard to its form." The parties to an action, and the mode of proceeding against them, are not the substance or subject matter of the action. In this case the sale or partition of the land among the parties is the *subject matter*. The two questions. who shall be parties, and how they must proceed to ascertain and dispose of their interests, relate to the *form* of procedure, Whether that proceeding shall be by petition, bill, or complaint, is a question of form. The Code has given this court jurisdiction of such actions, which it had not before, and has authorized an *action* according to its *forms* for this purpose. It has prescribed the mode of proceeding against infant defendants (§§ 115, 116). The guardian can receive no property of the infant till he has given satisfactory security. (§ 420). These provisions, in connection with the rules 52, 53, and 54, of Supreme Court, prescribe the rules on this subject, and apply to all actions under the Code. They afford a full protection to the rights of the infants. They contain no allusion to the bond required by the Revised Statutes at the commencement of a partition suit, but place the rights of infants in all cases on the same footing as they should be.

*C. Lawton*, for the purchaser.

HOFFMAN, J.—This case involves several questions as to the mode of proceeding in a partition suit under the Code, and is of much practical importance to the profession.

John G. Flammer became the purchaser of the premises in question, at a sale made under a judgment in partition, and objects to taking the property, on account of various defects in the title proffered to be made.

*First.* The objection that the property was sold by a map, which described it as some four or five feet of front, and about

six inches of depth, more than it proved to be, is well taken ; but it is capable of being removed by a reduction of price. That is not a sufficient ground to exempt the purchaser from performing his contract.

*Second.* As the materials for making up a perfect judgment and judgment roll are admitted to exist, the power of the court to rectify errors or omissions, and to perfect it now, is not contested, and this difficulty can be obviated.

*Third.* The next objection, so far as it relates to Elizabeth Jennings, probably does not exist in point of fact. The report finds that she is of full age, and of course capable of releasing her share. The purchaser may have further evidence adduced of the fact, if he desire it.

*Fourth.* The objection, so far as it concerns the situation of the infant defendants, is of a serious nature. It is insisted that the proceedings as to them are void ; that they cannot be bound by the judgment, and that the court cannot redress the irregularity.

The action is for the partition of the property of the late Joseph Jennings among his heirs at law, and was commenced in February, 1853, by summons and complaint under the Code. On the 13th of May, 1853, an order was made, appointing George W. Cook, guardian ad litem, for the four infant defendants, who are each entitled to one-sixth part of the premises. This order was general, reciting the petition of the mother, and appointing him the guardian of such infants, viz: Josephine, Francis, Maria, Emma, Fayette, and Josephus Jennings, in the defence of such suit, according to the statute in such case provided. It contained no direction as to the giving or filing of a bond.

After a report of a referee as to the title and other particulars, a judgment in partition was made on the 19th day of December, 1854 ; under this, a sale took place on the 15th of March, 1855, at which Flammer became the purchaser. The referee made his report of the sale, which was confirmed by an order of court, dated the 24th of April, 1855.

On the 4th of May, 1855, an application was made to the court for an order to allow a bond of the guardian to be filed, on an affidavit of it having been neglected, from the supposi-

tion that it was unnecessary.   An order was made, dated the
same date, giving leave to the guardian to file his bond, as
required by the statute in cases of partition—that it be appro-
ved and filed with the clerk *nunc pro tunc*, as of the time of
making the appointment, viz., the 13th of May, 1853 ; that
when so filed, the appointment of such guardian be of the like
validity and effect as if the same had been filed at the time of
making such appointment.

Accordingly a bond in proper form was executed and appro-
ved, and filed on the said 4th of May, 1853.   It is contended
that this order was ineffectual and void.

The case is first considered, as if the provisions of the Revi-
sed Statutes, as to these bonds, exclusively governed the ques-
tion.   Section  448 of the Code makes these provisions appli-
cable to actions under the Code, so far as they relate to the
substance and subject matter, without regard to the form of the
action.   The section is hereafter quoted and observed upon.

I. The provisions of the Revised Statutes referred to, are
contained in sections 2, 3, and 4, of the title Of The Parti-
tion of Lands.   They provide for the appointment of guardians
for infants, the manner of the application, period of notice, and
other particulars ; and the *third section* declares, that " the
guardian so appointed, *and who shall* give bond, as hereafter
directed, shall represent the minors in the proceedings, and
their acts shall be binding on such minors."

By section 4, " every guardian so appointed shall, before
entering upon the duties of his station, execute a bond,
in such penalty as the court shall direct, conditioned for the
faithful discharge of his trust ; and before any rule to plead,
or any other subsequent rule or order shall be made, the court
shall be satisfied that such bond has been executed and filed in
the office of its clerk."

Language cannot be more explicit to show, that the guardian
had no power to represent or bind the infant until he had
given the bond required.   It is difficult to avoid the conclu-
sion, that the judgment was as inoperative, as if the infants
had not been made parties at all.   The decision of Chancellor
Walworth, as to an appeal bond to the Court of Appeals being
incapable of amendment, or of being replaced by a valid bond,

may be referred to, as proving that no such correction can be made in this case. (Rogers v. Patterson, 4 *Paige*, 450. See Eldridge v. Howell, *Ibid*, 459, and McLaren v. Charrier, 5 *Paige*, 536. So in Barclay v. Brown,) 7 *Paige*, 245, it was held that no relief could be given where the party had omitted to appeal from a final decree within the time prescribed by statute.

The provisions of the Revised Statutes (2 *R. S.* 556, § 33), will not aid the case. They apply to bonds varying in form only from those prescribed by statute, or to bonds defective in some particulars, and which may be amended on the application of all the obligors.

Nor do I think that there is any authority upon the subject of orders being entered, or proceedings had, *nunc pro tunc*, which in the view of the case now taken, would sanction the direction to file a bond in this case. Such orders I believe have only been made, where the act had been substantially done at the time, and proven in some mode, although informal and defective. Thus a decree or order resting only in minutes has been ordered to be entered as of the proper day. A lost decree will be ordered to be entered from minutes or a copy. An enrolment being burnt, a new one was directed from a writ of execution. (*Seton on Decrees*, 393. *Hand's Practice*, 389. Anon 3 *Atk.*, 521. Lawrence v. Richmond, 1 *Jac. & Walk.*, 241. Sisson v. Brewer, 1 *Dick.*, 370. Goddard v. Earl of Suffolk, *Ib.* Barclay v. Brown, 7 *Paige*, 245).

The bond is also objectionable from not being executed by the guardian himself. It is given by two persons for him. The fourth section of the statute clearly requires an execution by the guardian. Perhaps this defect could be remedied under the sections before referred to, (2 *Rev. Stats.*, 556, §§ 33 & 34).

My conclusion therefore, is, that if the case rests upon the provisions of the Revised Statutes, the objection is a fatal one.

II. It is then insisted, that the question is to be governed by the Code, and that section 116 regulates the appointment of a guardian ad litem in partition cases also, and that no bond is requisite. Section 420 and rule 54 of the Supreme Court are all the provisions which govern the subject. A

bond or security is only required before the guardian is authorized to receive any money or property of the infant.

Section 448 of the Code must determine this question. It will be observed, that there was no such provision in the Code of 1848. It was inserted in the amendments of 1849. It had been decided before this amendment, that proceedings for partition could be taken by summons and complaint under the Code. One of the judges thought that it was the only mode of proceeding. (Watson *v.* Brigham, 3 *How. Pr. R.*, 290. Backus *v.* Stilwell, *Ib.*, 318). In other cases it was held, that the proceeding by petition under the statutes was not abolished. (Traver *v.* Traver, 3 *How. Pr. R.*, 351. Myers *v.* Rasback, 4 *Ib.*, 83. Row *v.* Row, *Ib.*, 133). And the weight of authority was clearly, that either mode of proceeding might be adopted.

The amendments of 1849, relating to this matter, were these:—The original 390th section of 1848 declared that until the legislature should otherwise provide, the act should not affect any proceedings provided for by titles 2, 3, 4, 5, 6, and 8, of chapter five of part III. of the Revised Statutes, except, &c. Now title 3 related to suits in partition. The amendment of 1849 (§ 471), omitted titles 2, 3, 4, and 5, and only retained titles 6 and 8, in this provision. Section 448 was passed as it now exists, as well as sections 449, 451, and 455, which may bear somewhat upon the present case.

Section 448 is as follows:—" The provisions of the Revised Statutes, relating to the partition of lands held or possessed by joint tenants, or tenants in common, shall apply to actions for such partition brought under this act, so far as the same can be so applied to the substance and subject matter of the action, without regard to its form."

The phrase " without regard to its form" applies of course to the form of the action; and one interpretation of the section then occurs, viz., that the provisions of the Revised Statutes which do not relate to the form of the action shall govern the proceedings in partition. Could we then point out with precision what parts of the Code relate to the form of the action, we should have a safe guide in the practice. The Code uses the phrase in title 1, of part 2, which is entitled " of the

form of civil actions." Section 69 abolishes the distinction between actions at law and suits in equity, and the forms of all such actions and suits ; and declares, " there shall be in this State but one form of action for the protection and enforcement of private rights, and the redress of private wrongs, which shall be denominated a civil action."

The forms which are abolished, are the various classes of actions enumerated or referred to in the ordinary books of practice or pleadings. For example, the second chapter of Chitty's Pleadings is headed, " of the forms of actions," and contains them. The proper form of the action, whether covenant, assumpsit, or any other, was to be concisely stated in the writ, and fully in the declaration. (1 *Chitty*, 94.)

In a strict point of view, then, the form of the action is the mode of instituting and exhibiting its nature, which under the Code is a summons and complaint, stating the cause of action. But if the meaning of the phrase is limited to this, we should be led into inextricable confusion, in determining when the statute and when the Code is to prevail. A more extended meaning is, that the Code is to regulate the course of proceedings in this action generally, as well as in any other. But that those provisions of the statutes which are peculiar to the action of partition, and as to which there is no corresponding provision in the Code, must prevail ; and again, provisions of the statute which are in addition to, and consistent with any provision of the Code, upon a particular subject matter, are likewise to govern.

Section 123 recognizes actions for partition among the actions which may be had under the Code ; and section 130 provides, that in case of a defendant in partition or foreclosure of a mortgage, against whom no personal claim is made, a notice may be delivered with the summons to that effect, and no copy of the complaint need be served. This sanctions the modes of service of the summons.

The case of Varian *v.* Stevens (2 *Duer*, 635,) not only recognizes the course of proceeding by service of the summons upon a minor personally, if over fourteen years ; but also, that Section 139 applied to the case ; and a voluntary appearance of a minor over fourteen was equivalent to personal service.

The infants there applied themselves for a guardian ad litem, who was appointed, and it was held that this was sufficient, without proof of the service of the summons personally upon them.

It seems to have been taken for granted, in several cases, that so far as the whole system of pleading is concerned, the course of the Code is to be observed.

Thus, in Stryker *v.* Lynch (11 *Leg. Obs.* 116), a demurrer was taken to the complaint, and the points arising upon it were chiefly decided upon the provisions of the Code.

In Brownson *v.* Gifford, (8 *How. Pr. R.*, 389), a demurrer was also taken, and the rules of the Code applied to it. In Ripple *v.* Gilborn (*Ib.*, 456), an objection, for want of proper parties, was taken by answer; it not appearing in the complaint, and allowed expressly under section 144 of the Code. But in the same case, the question whether the wife of the plaintiff was a necessary party, was decided, among other grounds, upon the sections of the Revised Statutes (§ 5 & 6). The Code, sections 117 and 122, were however referred to. In the same case, the learned justice says, that he is inclined to believe that in case the defendants omit to answer the complaint, the plaintiff must exhibit proof of his title, and the abstract of the conveyances, as required under section 23 of the act.

It may be useful to show application of these principles to section 1 of the statute, and to sections 2, 3 and 4, which bear upon the present case.

The first section, so far as it relates to the tenure and possession of the parties, is in force. So far as it requires the applicant to be of full age, it is also in force as to suits in this court, but not in the Supreme Court. By an act of April 14, 1852, (*Laws of* 1852, 411, *ch.* 277), proceedings may be instituted on behalf of an infant; and by the second section, a next friend shall be appointed in like manner, and shall give security in like manner as provided for in sections 2, 3, and 4, of the Revised Statutes.

The Supreme Court alone is mentioned in this statute.

Stryker *v.* Lynch (11 *Leg. Obs.*, 116), shows that the plaintiff must aver actual or constructive possession of the pre-

mises. Instead of the petition, the action is by summons and complaint.

The second, third, and fourth sections are inapplicable, so far as they relate to the parties to apply for a guardian ad litem, and the time and mode of applying. They contemplate an application previous to the presentation of the petition. But as sections 128, 129, 130, 133, and the second subdivision of section 134, of the Code, are applicable to a partition case, the action will have been commenced, and then section 116 will regulate the form of applying, and the parties to apply; while the substantial and consistent provisions as to the undertaking or bond of the guardian are also to be observed.

The third section of the act of April 14, 1852, which is hereafter more particularly cited, implies a legislative opinion that these sections are in force as to the giving of a bond.

The fifth section, under the construction suggested, would be applicable as to the contents of the complaint. These are in addition, or in compliance with the requisitions of section 142 of the Code. Ripple *v.* Gilborn (8 *How. Pr. R.*, 458), appears to be an authority to this.

Sections 6, 7, 8, 9, and 10, are also supposed to be applicable. They are consistent with sections 117 and 118 of the Code; perhaps what is directed in them, as to parties, would be necessary, at least proper, under those sections. In Ripple *v.* Gilborn, before cited, much reliance was placed upon sections 5 and 6, as requiring that the wife of a plaintiff should be made a party, as entitled to an inchoate right of dower.

Sections 11 and 12 would be inapplicable. They provide for the service of the petition, which in truth is the commencement of the proceedings. The action would be commenced, and the services of the summons made as in ordinary cases.

Justice Hoyt, in Parker *v.* Lee (6 *How. Pr. R.*, 491), and Justice Cuppen, in Ripple *v.* Gilborn, before cited, had laid down the rule, that upon default of the defendant, judgment is not to be given under the Code for the relief sought; but section 23 of the statute must be pursued. Watson *v.* Brigham, (1

*Code Reporter*, 67), appears to hold the contrary. In the first-mentioned case, a reference was directed to the clerk.

The statute is, that if the default of any of the defendants, whether known or unknown, shall have been entered, the court shall require of the petitioners to exhibit proof of their title, and an abstract of the conveyances by which the same is held. Such proof may be taken in open court, or by the clerk thereof, on a reference for that purpose.

Section 77, of the Judiciary Act, and section 471, of the Code, which are hereafter more particularly stated, as to another point, sanction a reference for this purpose to some person other than the clerk. And under the Code, the second subdivision of section 246 would warrant it, if the Code is to prevail.

Without pursuing this examination of the various sections of the statute, or of the decisions further, I may observe, that a series of the provisions are peculiar to the action of partition, and that nothing identical or similar is to be found in the Code.

We may commence under this head with section 26. The appointment of commissioners, and the regulation of their duties, are controlled by this, and the subsequent sections, undoubtedly so far as they relate to an actual partition.

There is another point in this case, as to which some observations may be proper. The course under rules 74 and 75 of the Supreme Court, has been pursued; a reference was had, there being infants; and upon coming in of the report, a sale was directed, under the direction of a referee.

It will be remembered, that the partition act gave, in section 84 (79), the same power to the Court of Chancery to decree partition and sales, as was given to the common law courts; and that section 49, of the amended act of 1830, (*Laws of* 1830, *ch.* 320, 2 *Rev. Stats.*, *3d ed.*, 330, § 91), provided, that whenever a reference to ascertain and report incumbrances was necessary, it might be made to a master, or to a register or clerk, as the court should think fit. Section 88 also (3 *Ed.*) was a copy of the law of 1826, authorizing masters to make the preliminary report, and to conduct the sales, and give the title.

All this machinery being abolished by the Constitution of 1847, the Judiciary Act (§ 77) provided, that any matter before referred to a clerk, master, or referee, might be referred to a clerk, county judge, &c., or other *suitable* person or persons, with the same power as heretofore possessed by such officer or person.

The Chancery rules, 177 and 178, were framed upon the provisions of the Revised Statutes before referred to; and the rules in Equity, adopted by the Supreme Court in 1847, (rules 124 and 125), were copies of these. They have remained unchanged in the rule book since.

Section 448 appears to prescribe two, and only two series of provisions for the conduct of a partition suit, viz., the Revised Statutes and the Code. The former phrase undoubtedly includes all acts after 1850, professedly amending the statutes. But it is difficult to say it includes anything else of the statute law.

Section 471 of the Code must, however, be adverted to. One clause enacts, that until the legislature shall otherwise provide, the second part of the Code shall not affect any existing statutory provision relating to actions not inconsistent with the act, and in substance applicable to the actions provided for.

It was before observed, that in 1848 the title of the Revised Statutes relating to partitions was also enumerated in this section as exempted, and when section 448 was adopted it was omitted in such enumeration.

The propriety of the course pursued in this case, of a reference to a referee, to ascertain the title, &c., depends, I apprehend, entirely upon the clause of section 471, and the judiciary act.

A sale and conveyance by a referee, instead of commissioners, depended also until 1851 upon section 77 of the judiciary act, and section 471 of the Code. It was decided, that in foreclosure cases, a sale might be made by a referee as well as by the sheriff, (3 *How. Pr. R.*, 120); and the judges of the Supreme Court amended their rule (*No.* 47), by adding the words "*or a referee,*" in the clause providing for a sale, under the direction of the sheriff.

The act of 1826, (*Laws of* 1826, 146, *ch.* 157), before noticed, (2 *Rev. Stats.*, 330, § 88), authorized a master in chancery to make these sales instead of commissioners; and the judiciary act (§ 77) provided that sheriffs might sell lands, in their respective counties, ordered to be sold by any decree of any Court of Record in the State, and to give conveyances thereof in the same manner and with like effect as is now done by a master in chancery.

The practice prevailed to a very great extent, of selling under the direction of a referee, in partition as well as in foreclosure suits. A large amount of property is held under such a title, and some of the most experienced and careful conveyancers in the city have sanctioned it. There does not appear to be any distinction between the cases, and if the rule of the Supreme Court was legal as to foreclosure cases, the course in partition cases would seem equally proper.

But, (probably to remove questions of this character), by the amended Code of 1851, section 187 was altered, by adding the following clause: "Real property adjudged to be sold, must be sold in the county in which it lies, by the sheriff of the county, or by a referee appointed by the court for that purpose; and thereupon the sheriff or referee must execute a conveyance to the purchaser; which conveyance shall be effectual to pass the rights and interests of the parties adjudged to be sold." The words "in the property," it is supposed should be inserted before the word adjudged. This provision may be considered as in addition to, and modified by the judiciary act. The course therefore now seems free from doubt.

Again, it might be successfully contended, that even upon the views now taken, section 174 of the Code would apply. The court would have been authorized to make the order of May 4th, for filing the undertaking. That section authorizes the court to allow any act to be done after the time limited by the act, and it may admit of a sufficient broad construction to govern this case. But here the act of the legislature, of April 14, 1852, creates a serious difficulty. (*Laws of* 1852, *ch.* 277).

The first and second sections of that act remove the disability which an infant was under, to institute proceedings in par-

tition under the Revised Statutes. They permit this to be done, and regulate the appointment of a next friend for him, by the provisions of these statutes, in the sections 2, 3, and 4, which I have referred to. Besides, the Supreme Court alone is mentioned in these provisions.

Then, by the third section of the act, " whenever it shall appear that in any action, suit, or proceeding for the partition of lands, heretofore instituted, or hereafter to be instituted, in any court authorized to decree partition or sale thereof, any guardian for minors has entered upon the execution of his duties, and rules or orders have been made, without the filing of the bond required by the fourth section of the Revised Statutes," (that above cited), " or that such bond cannot be found on file, such court, or any judge thereof, may, on application of any party to the suit or proceeding, at any time before judgment or decree in all cases, or after judgment or decree in cases of actual partition, authorize and direct the filing of a bond by such guardian, to be filed as of the same date as the order appointing him; and all proceedings in the suit subsequent to the date of the order of appointment, shall be of the like force and effect, as if the bond had been duly filed.

This statute does not govern the present case, as a sale was adjudged, and the judgment was actually entered, before the application for liberty to file the bond. The order for confirmation was not the judgment.

The statute appears to imply two things : *first*, that the sections 2, 3, and 4, are in full force ; and *second*, that an act of the legislature was necessary to authorize the court to direct the filing of a bond *nunc pro tunc*, in any case. It employs the words *action*, *suit*, or *proceeding*, for partition of lands, as if carefully to include the action under the Code. It is a legislative declaration that the filing the bond, as prescribed, is a matter of substance within section 448.

I cannot, then, regard the order of May as valid, under any view of the question. At any rate, to compel a purchaser to take a title, with such a doubt upon it, would be contrary to the settled doctrine of a Court of Equity.

Motion denied, without costs.